24 C.C.P.A.(Patents)

### LASKER et al. v. KUROWSKI et al.
### Patent Appeal No. 3856.

Court of Customs and Patent Appeals.
June 7, 1937.

Samuel E. Darby, Jr., of New York City (Floyd H. Crews, of New York City, of counsel), for appellants.

Burnham C. Stickney, of New York City, for appellees.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

There is here brought to us for review the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences, in a patent interference proceeding, awarding priority to appellees. The only question involved is priority to be determined from the evidence. Ten counts, numbered 1 to 10, inclusive, appear in the interference; but since the matter turns upon a single element, as combined with others, there is no occasion for analyzing the counts separately. Count 2 seems fairly illustrative of the subject-matter. It reads: "2. The combination with a recording machine comprising a carriage and a key board; of punches, an electro-magnet for each punch for controlling it for operation, a circuit closer for each key to energize a magnet when its corresponding key is depressed, a common circuit closer for all of said magnets, and a bar movable with said carriage for opening and closing said common circuit closer for predetermined positions of the carriage."

The interference was declared between a patent, No. 1,790,479, issued to appellants

January 27, 1931, on an application filed September 17, 1926, and an application of appellees, serial No. 645,896, filed December 6, 1932, for the reissue of patent No. 1,745,-172, issued to them January 28, 1930, on an application filed January 2, 1926. The counts correspond to claims in the patent of appellants, copied by appellees into their reissue application.

As will be observed from count 2, supra, the invention is a combination of a typewriting machine and a card punching device, the two being connected by means whereby the punching operation is automatically controlled as the typewriter keys are operated and the typewriter carriage moves. This means consists, as expressed in the quoted count, of "a bar movable with said [typewriter] carriage for opening and closing said common circuit closer for predetermined positions of the carriage."

The complete device is designed for producing perforated record cards (used for making groupings, analyses, tabulations, etc.) simultaneously with the typing of the record upon a work sheet in the typewriter. To this end the typewriter keys are electrically connected with the proper parts of the punching device. Frequently, it is not desired to transfer to the record card some portions of the matter being typed upon the work sheet; consequently, it is desired to break the electrical connection at the point where the typewriter reaches such portions, and restore the connection when matter is reached which it is desired to record upon the cards. It appears that in the prior art the breaking of the electrical connection was accomplished by the operator manually through either a button switch or a foot switch. The present invention is designed to provide for breaking the connection automatically. This, it is said, is accomplished by cutting away portions of the surfaces of the bar, and providing a series of cams on the typewriter carriage to control the electric switch. As the bar travels with the. typewriter carriage, when the cam encounters the portion of the surface not cut away, the circuit is closed and punching of the card ceases. When it reaches a cut-away portion the connection is automatically restored and the punching operation begins.

It is not questioned that appellees disclosed the invention in the application for the original patent filed January 2, 1926. The Examiner of Interferences awarded them conception "prior to the end of October, 1925," and held that they showed due

diligence between that time and the filing date of their application. This, the board affirmed.

As to the date or dates awarded appellants, counsel appearing before us on behalf of the respective parties are in sharp disagreement. Counsel for appellants seem to have the theory that they received an affirmative award of October 31, 1925, for both conception and reduction to practice. Counsel for appellees maintains that there was no affirmative award to appellants of any date for either conception or reduction to practice. From our study of the respective decisions below, it is our conclusion that the contention of counsel for appellees is correct. The purport of the decision of the Examiner of Interferences, later approved by the board, is that the earliest date which *could* be awarded appellants, even when given the benefit of certain assumptions claimed to be justified by the evidence (but not specifically passed upon by the Examiner of Interferences), was October 31, 1925. The language of the board is somewhat more specific, but even it does not, in our opinion, constitute an affirmative award to appellants of any date. We think it obvious that in view of their conclusions as to the conception date and diligence of appellees, it was felt by the tribunals that an award of specific dates to appellants was not required.

There is no contention before us that there was lack of diligence on the part of appellees, but it is contended that December 1, 1925, is the earliest date on which conception by the latter can be considered to have been proved.

In the brief on behalf of appellants it is contended that they proved conception "on December 10, 1924," and "again during the month of May, 1925," and "again in September, 1925." Further, it is contended that they proved reduction to practice "during September, 1925," and "again prior to December 1, 1925," and "again prior to March 12, 1926." Diligence is alleged in the brief to have been proved from the first date of conception claimed, December 10, 1924, "through all their reductions to practice." In the preliminary statement reduction to practice was claimed on or about November 21, 1924.

■ The record in the case is voluminous, much oral testimony having been taken, and many documentary exhibits having been introduced on behalf of both appellants and appellees. The Examiner of Interferences

134

reviewed the evidence in great detail. The board's decision was less elaborate but it covers every pertinent question succinctly. There was agreement by the tribunals of the Patent Office upon every material issue of fact presented. . Under such circumstances, the controversy being only as to facts, it is well understood that a heavy burden rests upon the appealing parties. This court will not reverse except it be convinced that the concurring decisions were clearly wrong.

■ We first consider the contention with regard to the date of appellees' conception. In their preliminary statement they claimed August 28, 1925. . Subsequently, they sought, unsuccessfully, to amend the statement and claim conception as of June 10, 1925. Both Smith and Kurowski testified at length. To review their evidence in detail is unnecessary. It is recognized that, being joint inventors, the oral testimony of one may not, under the rule, be accepted as sufficient, standing alone, to corroborate the oral testimony of the other and thereby establish conception, but that there must be other corroborative evidence.

■ The patent to appellees, reissue of which is being sought, is quite an elaborate one containing, as issued, 92 claims. The written specification covers almost seven printed pages and there are five pages of drawings embracing 12 figures. We think it is clear that in the spring or early summer of 1925, possibly in 1924, the broad idea of providing a connection between a typewriting machine and a card punching machine in which there would be an automatic control of the electrical switch was in the minds of appellees, and there appears in the record a letter addressed by Smith to Kurowski under date of August 28, 1925, a copy of which at the same time was sent to the patent attorney having in charge the preparation of the application. In this letter Smith, after reciting the disadvantages incident to the prior art whereby control was exercised manually by the operator of the typewriter through the medium of a foot pedal, said:

"I would therefore suggest that you attach to the front of the typewriter directly in line with the type bar guide at the printing point, a connection; and that you have a second connection point attached to the traveling typewriter carriage. These connecting points can be adjustable, and be placed anywhere on the carriage. The idea is that when the carriage with the disconnect connection reaches the connection attached to the front of the typewriter, that contact will be made or broken as the case may be, and the punch made inoperative; that a further movement of the typewriter carriage will make the punch operative. In this way, the disconnecting of the punch is made automatic.

"There are many ways in which this could undoubtedly be worked out, and I would suggest that you give this some thought and include this in your sketches to Mr. Stickney [the patent attorney of the company with which appellees are associated] so that he can protect the company's interests."

Kurowski testifying as to this letter stated, in substance, that previously there had been verbal discussions between them upon this specific subject; that he interpreted the letter as being a memorandum to verify such verbal discussions; that he had his layout completed before its receipt; and that the feature at issue had been incorporated in a drawing or drawings sent to the patent attorney September 25, 1925.

A draftsman of the attorney's office testified at length concerning the showing of the drawings and blueprints which had been supplied by appellees, including the dates thereof, and concerning the letter of August 28, 1925, from Smith to Kurowski. The details of this testimony are given in the decision of the Examiner of Interferences and are repeated in substance in the decision of the board. It is unnecessary to repeat them here. We agree that it is clear that the draftsman understood the invention at issue from the documents so furnished and that conception on the part of appellees is shown prior to the last of October, 1925.

Turning now to the evidence on behalf of appellants, it is to be borne in mind that they also claim joint invention, and that the same rule as to corroboration applies to them as that applicable to appellees. The Examiner of Interferences said: "The case for Lasker and Russell rests largely upon the recollection of witnesses, testifying on and after December 14, 1933, concerning events alleged to have happened in the years 1924 and 1925. In the case of American Bell Telephone Company v. The People's Telephone Company et al., 22 F. 309, 29 O.G. 1029, 1884 C.D. 475, one hundred witnesses, more or less, testified that on one or more occasions, which took place from five to ten years before they thought they saw this or that device used as a talking machine; yet despite this cloud of witness-

es for the defense, the great body of which were undoubtedly honest, a decree was ordered for the complainant, which was affirmed on appeal (The Telephone Cases, 126 U.S. 1, 8 S.Ct. 778, 31 L.Ed. 863, 43 O. G. 377, 1888 C.D. 321). Such testimony must always be carefully scrutinized, and in view of the situation previously outlined in this decision, it is believed that Lasker and Russell bear the burden of establishing that such evidence offered on their behalf is particularly satisfactory and convincing."

We fail to find in the record anything of a documentary nature such as drawings, letters, or the like, bearing any date prior to appellees' filing date which, in our opinion, tends to corroborate the oral testimony of appellants relating to either conception or reduction to practice. The first date alleged for conception in their preliminary statement is "on or about the first day of November, 1924," with a claim that a drawing and disclosure to others was first made on or about November 21, 1924. The first written description claimed is "about two or three weeks prior to the first day of May, 1925."

The purport of the evidence relative to this drawing and disclosure is that the drawing, or sketch, was shown to a party named Capron and a party named Griffiths on or about November 21, 1924; that the sketch was subsequently lost; and that on July 9, 1926, Russell prepared an inter-office letter, which appears in the record as Appellants' Exhibit 2, in which the alleged disclosure is referred to, the letter being accompanied by a sketch dated 7/7/26, which is stated to be similar to the original sketch. The letter states, just above Russell's signature, that both Capron and Griffiths recall the original conversation and sketch and "are signifying the same by signing at the bottom of this paper." Capron's signature, however, does not appear nor was he called as a witness. No explanation was offered as to the failure to call him. At the bottom of the paper there is a typewritten line reading, "The foregoing agrees with my recollection of the matter," over the signature of Griffiths. This statement is not dated, nor did either Griffiths or Russell in testifying in the interference proceeding state when Griffiths signed it. Griffiths gave some testimony relative to the sketch alleged to have been made in November, 1924, and his recollection of what it disclosed; but we do not regard it as sufficiently definite to establish that Russell (who alone is claimed to have made the sketch, Lasker being alleged to

have joined in the invention of this particular feature by some suggestion of change made after he had been shown the original sketch) was then in possession of the invention.

There is testimony by a witness named Pulster, who seems to have had some connection, together with Russell, with an installation of a foot pedal controlled device for R. H. Macy & Co. in 1924, out of which the conception by Russell is claimed to have originated, but Pulster's testimony, like that of Griffiths, is, in our opinion, too indefinite as to details to corroborate or substantiate appellants' claim of conception at that time.

Other evidence claimed by appellants to be added proof of conception consists of printed articles and photographic illustrations introduced as exhibits. It seems clear that the printed articles contain language applicable to a manually controlled device, and Lasker himself testified that the photographs represent a switch button combination.

As to one article, however, and the illustration accompanying it, counsel for appellants, notwithstanding Lasker's testimony, are quite insistent upon their sufficiency to show conception.

It has been stated above that appellants' claim of first written description is "about two or three weeks prior to the 1st day of May, 1925." This claim is based upon certain printed matter and an illustration which, seemingly at the instance of Russell (who, according to the record, as stated in appellants' brief, "was responsible * * * for bringing out publicity in the form of editorials in various trade papers and technical magazines"), appeared in the Banker's Service Bulletin published in May, 1925.

Russell caused to be made what was referred to in oral argument as a "synthetic photograph," by which we understand is meant a photograph retouched so that features appearing in the original are eliminated, or features not appearing in the original are introduced. It is claimed that the retouched photograph under discussion was made December 10, 1924, and that it shows "how the hook-up would look with a control bar"; it being said that no control bars had at that time been manufactured.

It was this retouched photograph which was used in the Banker's Service Bulletin and accompanying it is certain descriptive matter. From our examination of the pic-

ture and the descriptive matter, we are quite convinced that they may not be taken as evidence of conception. We fail to see where the bar is shown in the photograph, or described in the printed matter, in any manner which would enable one skilled in the art to make it and apply it as the counts require. As is said by the board: " * * * there appears to be nothing in this or the related exhibits that can be taken as disclosing the automatic idea of operation as distinguished from manual operation."

This disposes of the claim of conception in either November, 1924, or May, 1925, and, as of course, disposes of the claim for reduction to practice in November, 1924.

The third alternative claim of proof of conception made in appellants' brief is "in September, 1925," and since a reduction to practice is also claimed at that time, the two may be considered together.

The preliminary statement of appellants alleged that the invention was embodied in a full-sized machine, completed shortly after September 15, 1925, and first successfully operated in that month "in the City of Detroit, County of Wayne, and State of Michigan."

The evidence shows the installation of a device in the plant of Detroit Edison Company some time in *November*, 1925, but it was a device operated manually by a foot pedal, and did not give satisfaction. There is testimony to the effect that a maintenance inspector of the company with which appellants were associated, who was sent to Detroit, devised a control bar made out of bakelite; that a sketch of this bar was sent to appellants' company; and that a week or ten days later a contact bar made of brass was received and installed in the Detroit plant. There is some conflict in the testimony of appellants as to when the brass bar was installed and began to work satisfactorily.

There is also testimony of the making of another bar in September, 1925. It is testified that both the latter bar and that for the Edison plant were made without drawings. These bars were not themselves produced, no drawings of them were offered, nor even a letter showing anything as to the time of their being made, shipped, or installed. The whole case rests upon oral testimony given many years after the critical dates. It is true that there were offered on behalf of appellants certain papers embraced in an exhibit marked "8," being requisitions for material and the like. Only one of these papers bears a date prior to appellees' filing date, and that one, marked "11/23/25," relates to "Power Card Design," which, as the Examiner of Interferences points out, would be as necessary in a foot pedal combination as in an automatic combination.

It is deemed unnecessary further to review or comment upon the testimony in the case. Those interested will find in the decisions below ample discussion of every material point. Appellants have not produced documentary evidence of any character which can be related to either conception or reduction to practice of the invention by them prior to the filing date of appellees, and the oral testimony of others by which they seek to corroborate their own personal testimony is not of the definite and precise nature either as to details of structure or dates when such structure was conceived, to meet the requirements of the law.

The decision of the Board of Appeals is affirmed.

Affirmed.